IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMANDA NICOLE RISOVI,
    Movant,

v.

UNITED STATES OF AMERICA,
    Respondent.

No.   4:17-CV-842-A
       (4:16-CR-118-A)

## APPENDIX TO MOTION TO DISMISS SECTION 2255 MOTION AS UNTIMELY FILED

Respectfully submitted,

Erin Nealy Cox
United States Attorney

Timothy W. Funnell
Assistant United States Attorney
Wisconsin State Bar No. 1022716
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102-6897
Phone 817-252-5252
tim.funnell@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on December 6, 2017, I filed this appendix with the clerk of court for the U.S. District Court, Northern District of Texas. A copy of the motion was sent to Amanda Nicole Risovi, Register No. 54042-177, FCI Aliceville – Camp, P.O. Box 487, Aliceville, AL 35442, by certified mail.

Timothy W. Funnell
Assistant United States Attorney

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| AMANDA RISOVI | § | |
|     Defendant-Appellant | § | |
| | § | |
| v. | § | No. 16-11557 |
| | § | |
| UNITED STATES OF AMERICA | § | |
|     Plaintiff-Appellee | § | |

## MOTION TO DISMISS APPEAL

### TO THE HONORABLE JUDGE OF SAID COURT:

Now comes AMANDA RISOVI, the Appellant, by and through her counsel, moves this Court to dismiss the appeal filed on October 25, 2016, and in support shows:

### I.

The Appellant voluntarily desires to dismiss the appeal of this action. Specifically, the Appellant engaged in correspondence with counsel via CorrLinks on December 13, 2016, and December 14, 2016, as well as via telephone on December 13, 2016. In those communications, appellant communicated to counsel her wish to withdraw her appeal. The December 14, 2016, CorrLinks communication, where the appellee explicitly expressed her desire to withdraw her appeal, is attached.

II.

Neither the Appellant nor the Appellee have filed briefs in this matter. Accordingly, it is not prejudicial to grant the requested dismissal.

III.

The ends of justice and concerns of judicial economy would not be served by a refusal to grant the requested dismissal of this appeal.

**WHEREFORE, PREMISES CONSIDERED**, Appellant prays this Court enter an order dismissing this appeal.

Respectfully submitted,

By: //s//Steve Jumes//s//

STEVE JUMES
Varghese Summersett PLLC
Texas State Bar No. 00796854
300 Throckmorton, Suite 1650
Fort Worth, Texas 76102
Telephone/Fax: (817)203-2220
Email: steve@versustexas.com
Attorney for Defendant-Appellant

## CERTIFICATE OF SERVICE

I certify that on December 15, 2016, I electronically filed this document with the Fifth Circuit of Appeals using the CM/ECF system which will send notification of such filing to the following:

Assistant U.S. Attorney, Wes Hendrix

//s//Steve Jumes//s//

Steve Jumes

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| **AMANDA RISOVI** | § | |
| **Defendant-Appellant** | § | |
| | § | |
| **v.** | § | **No. 16-11557** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| **Plaintiff-Appellee** | § | |

## O R D E R

On _____, 201____, came on to be considered

*Amanda Risovi's Motion to Dismiss*.  Said motion is hereby:


(Granted)


(Denied)

_____

JUDGE PRESIDING

 

**Corr**Links

*'nbox*

From: AMANDA NICOLE RISOVI (54042177)

Date: 12/14/2016 3:36:29 PM

Subject: Appeal

Message: Steve,

I would like to withdraw my appeal. Thank you.

Amanda Risovi
54042-177

Guidance to REMOVE yourself from this specific prisoner's contact list or REFUSE all federal prisoner's requests for message exchanges is provided within CorrLinks.

By utilizing CorrLinks to send or receive messages you consent to have Bureau of Prisons staff monitor the informational content of all electronic messages exchanged and to comply with all Program rules and procedures.

Your messages may not exceed 13,000 characters and no attachments will be accepted.

For additional information related to the program, please visit the http://www.bop.gov/inmate_programs/trulincs_faq.jsp

In order to print a message, you need to have 📄 Adobe Acrobat Installed. Click here to download it for free.



004

Case: 16-11557   Document: 00513802770   Page: 1   Date Filed: 12/19/2016
Case 4:16-cr-00118-A   Document 279   Filed 12/19/16   Page 1 of 2   PageID 968

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

4:16-c R - 118 - A-(6)

No. 16-11557

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DEC 19 2016

DISTRICT COURT

Certified as a true copy and issued
as the mandate on **Dec 19, 2016**

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

AMANDA NICOLE RISOVI, also known as Amber Nicole Risovi, also known
as "Nikki",

    Defendant - Appellant

---

Appeal from the United States District Court for the
Northern District of Texas, Fort Worth

---

**CLERK'S OFFICE:**

    Under FED R. APP. P. 42(b), the appeal is dismissed as of December 19,
2016, pursuant to appellant's motion.

                LYLE W. CAYCE
                Clerk of the United States Court
                of Appeals for the Fifth Circuit

                *Melissa Mattingly*

                By: _____
                Melissa V. Mattingly, Deputy Clerk

        ENTERED AT THE DIRECTION OF THE COURT

Case 4:17-cv-00842-A   Document 10   Filed 12/06/17   Page 8 of 23   PageID 78

Case: 16-11557   Document: 00513802769   Page: 1   Date Filed: 12/19/2016
Case 4:16-cr-00118-A   Document 279   Filed 12/19/16   Page 2 of 2   PageID 969



# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

December 19, 2016

Ms. Karen S. Mitchell
Northern District of Texas, Fort Worth
United States District Court
501 W. 10th Street
Room 310
Fort Worth, TX 76102

    No. 16-11557    USA v. Amanda Risovi
                 USDC No. 4:16-CR-118-6

Dear Ms. Mitchell,

Enclosed is a copy of the judgment issued as the mandate.

          Sincerely,

          LYLE W. CAYCE, Clerk

          *Melissa Mattingly*

          By:
          Melissa V. Mattingly, Deputy Clerk
          504-310-7719

cc w/encl:
    Mr. James Wesley Hendrix
    Mr. Steven Todd Jumes

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA § 
 §
v. § Case No.: 4:17-CV-00842-A
 §
AMANDA NICOLE RISOVI (06) §

## AFFIDAVIT IN ANSWER TO CLIENT'S CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Steve Jumes, Appellate Counsel (counsel), offers this affidavit outlining some of the efforts he made in this case and specifically responds to Ms. Risovi's claim that he was ineffective.

Specifically, Ms. Risovi asserts that counsel was ineffective in the following ways. These are merely allegations and not factual.

1. Jumes failed to properly explain the grand jury process. Further, his advice to plea by information deprived her of her right "not to be held to answer" to her crime. Also, Ms. Risovi alleges that Jumes failed to explain the difference between an Indictment and Information.
2. Jumes failed to secure a written proffer agreement. Ms. Risovi also alleges she got no credit "off at sentencing" for her proffer.
3. Jumes failed to challenge the statement Ms. Risovi made during a non-custodial interrogation via suppression while she was allegedly under the influence and without an attorney.
4. Jumes failed to explain the purpose and importance of the presentence report.
5. Jumes failed to challenge the fact that the Court sentenced the

defendant in excess of the statutory maximum.

6. Jumes failed to request a psychiatric exam and failed to file a Motion for Competency Hearing. Ms. Risovi also alleges she made a bona fide suicide attempt shortly before her plea of guilty.

7. Jumes failed to object to errors within her PSR. Further, Jumes failed to "carry over unresolved arguments into a sentencing memorandum" and failed to object to the incorrect starting point within the PSR Guideline calculation.

8. Jumes failed to correct the Court's mistaken pronouncement of the statutory maximum punishment and failed to property calculate the applicable Guideline range as well as failed to argue for mitigating circumstances.

9. Jumes induced and coerced Ms. Risovi to withdraw her appeal and promised she would get a better result via Rule 35. Further, Ms. Risovi alleges Jumes "failed to secure (in writing) a promise form the government to file a motion, within one year." Further, Ms. Risovi alleges that Jumes failed to inform her that a Rule 35 would have to be filed within a year of her sentence."

10. Jumes' failures deprived Ms. Risovi of placement in a long-term drug treatment facility "and/or would been sentenced to approximately 1/4 of the current (168 month) sentence."

Counsel denies each of these claims and asserts that the Petitioner's assertions are part of a pattern of manipulation and prevarication. Further, counsel will list the case history, his case strategy, and his actions taken on behalf of Mr. Risovi.

## Case history

Ms. Risovi engaged in a non-custodial interview with DEA agents on or about October 23, 2015. A DEA-6 report is attached with this affidavit. At that point in time she was not under arrest and had not been charged in this matter. No attorney was present. She agreed to the

interview. During the interview she admitted that she acted as a bookkeeper for another drug dealer for several months in 2014. She stated that she allowed this dealer to bring approximately one kilogram of methamphetamine to her residence daily and accompanied her on many occasions. She also identified other participants within that drug conspiracy.

On or about November 10, 2015, Ms. Risovi met with counsel to discuss representation having informed counsel of her previous non-custodial interview. She was not in custody at this point and met with counsel in counsel's office. At that point she was seeking to hire counsel for future representation. However, she did not make further contact with counsel until she was ultimately arrested pursuant to a federal Complaint the following year.

In late March of 2016 a Complaint was filed alleging Ms. Risovi's participation in this drug conspiracy. The Complaint alleged a violation of 21 USC 841(b)(1)(B). That offense carries a penalty range of between 5 and 40 years imprisonment.

At that time the Court approved Ms. Risovi's request for the Court to appoint counsel to serve as her court-appointed attorney in this case. Counsel agreed and was appointed on April 4, 2016.

During counsel's representation Mr. Risovi acted rationally, intelligently, and strategically. At no point did she express any concern that her non-custodial statement was obtained via force, coercion, trickery, or duress of any kind. Further, it was clear, even as early as November the previous year when counsel and Ms. Risovi first met, that she had no intentions of contesting her guilt or going to trial. She has consistently been clear during counsel's entire representation that she was an admitted drug addict who voluntarily participated in the conspiracy. Her outlined goal from the beginning was to cooperate and obtain the most beneficial sentence possible.

To that end, counsel arranged for a proffer interview. Ms. Risovi read and signed a proffer agreement. That agreement is attached to this affidavit. During her proffer, Ms. Risovi named multiple drug conspirators and referenced her cell phone, which contained many

contacts. The agents expressed a desire for another interview, which counsel attempted to make happen on multiple occasions. Unfortunately, the DEA did not have another proffer meeting with Ms. Risovi before her sentencing hearing on October 12, 2016.

However, on September 2, 2016, the government filed a motion for downward departure on the basis of substantial cooperation under 5k1. The proffer agreement is attached to this affidavit.

Before her guilty plea to an Information, counsel explained that Ms. Risovi had a right to insist upon a present of her case before a grand jury as well as the difference between an Indictment and Information. She understood the distinction and felt a grand jury presentment was unnecessary given her proffer and non-custodial interview. More importantly, counsel was able to negotiate a reduction in charge via Information. That is, while she was subject to a 5-40 range under (b)(1)(B) in the Complaint counsel negotiated the case proceed under (b)(1)(C) which reduced Ms. Risovi's exposure to 0-20 years imprisonment. Ms. Risovi was in favor of waiving Indictment to secure this reduction. The Court also explained Ms. Risovi's right to a grand jury consideration of her case before Judge McBryde during her re-arraignment. Ms. Risovi also signed a waiver ofIndictment. That waiver is attached to this affidavit.

On October 19, 2016, counsel met with Ms. Risovi to discuss her appellate rights. Counsel expressed a willingness to file a Notice of Appeal but Ms. Risovi told him not to do so until she could weigh her options. She was contemplating pursuit of a Rule 35. Counsel did not get any directive regarding appeal before the October 26, 2017, deadline to file a Notice of Appeal.

In an abundance of caution, counsel filed a Notice of Appeal on October 25, 2016.

During counsel's representation, both during and after her sentence was imposed, counsel explained whether any legitimate bases for appeal may exist. Further, counsel explained that if the DEA were so inclined, it may opt to file a Rule 35 motion if it felt that Ms. Risovi's cooperation resulted in even more benefit than was already accounted

for pursuant to her 5k1.

Ms. Risovi, after discussing the matter with counsel elected not pursue her appeal.

During counsel's representation counsel arranged for a transfer from Parker County Jail to Mansfield Jail. During the many meetings Ms. Risovi and counsel participated in while she was at Parker County Jail, Ms. Risovi complained that the jail was not giving her appropriate medication. At one point she inflicted injuries to her neck and wrist.

Counsel discussed Ms. Risovi's mental health care multiple times with nursing staff at Parker County Jail. Officials in the medical section expressed that Ms. Risovi was malingering and her wounds were not genuine suicide attempts. Nonetheless, counsel practically begged the US Marshal's Office to arrange a transfer. This was done in an abundance of caution. Despite resistance, she was transferred from Parker County Jail to Mansfield Jail.

Counsel never felt Ms. Risovi was confused as to her situation, under the influence of narcotics during any jail visit or court appearance, or unable to assist in her defense. Quite the contrary, Ms. Risovi was savvy at all points. She was sober. Her requests were always self-serving and logical. Not only did she understand the legal process at a higher level than most of counsel's clients, she understood the benefits and drawbacks of every possible tactic discussed.

At all times Ms. Risovi wished to acknowledge her guilt, pursue a 5k1, pursue a Rule 35, and make an appeal for leniency to the Court.

Counsel filed a motion for downward variance as well as character letters. Counsel also reviewed Ms. Risovi's proposed comments at sentencing with her.

Ultimately, Ms. Risovi successfully pursued the course of action we both felt were in her best interests. Her Guideline calculation called for a range of 30 years to life imprisonment. She not only received the benefit of the 20-year cap counsel negotiated under (b)(1)(B). She also received an additional 5k1 benefit resulting in a 20 month further decrease. Given the amount of narcotics she admitted to far before she ever met counsel as well as her substantial criminal history, she is not only NOT

prejudiced, she is fortunate to have received a 220 month sentence.

## Case Strategy

Counsel's goal was to obtain the lowest sentence possible once Ms. Risovi stated that she felt a trial was not in her best interest. Counsel agreed with that assessment given the number of likely co-conspirators to present information against her but, more importantly, her own non-custodial interview which amply inculpated her and subject her to more than 30 years imprisonment under the Guidelines.

## Counsel's Actions on Behalf of Ms. Risovi

1. Counsel met with Ms. Risovi at his office in November 2015 where she admitted her role in a large-scale drug conspiracy as well as the fact that she admitted the same to DEA agents in a non-custodial interview prior.
2. Counsel met with Ms. Risovi 6 times at Parker County Jail to discuss case discovery, get her rendition of case facts, and discuss her medical situation in advance of her plea.
3. Counsel attended Ms. Risovi's proffer interview on April 20, 2016. This was completed 5 weeks before her guilty plea and within 3 weeks of counsel's appointment.
4. Counsel arranged for Ms. Risovi's transfer from Parker County Jail to the Mansfield City Jail. This was done in an abundance of caution, not upon the basis of any lack of sobriety or lack of mental capacity to assist in her own defense. This was done at the client's request and even in the face of Parker County medical staff expressing skepticism as to any concern that Ms. Risovi may harm herself.
5. Counsel reviewed the factual resume Ms. Risovi signed as well as her right to have her case reviewed by a grand jury. This was done on multiple occasions.
6. Ms. Risovi discussed with counsel the lack of viable defenses. This

included challenging her statements to law enforcement officials via suppression and proceeding to trial. She at all times acknowledged the voluntariness of her admissions, her desire to get the case over with, and the inadvisability of going to trial given her own confession and the number of people who were incarcerated who could provide damaging information against her. At no time did she request either a suppression motion or a trial. Here strategy was always to proffer, plea guilty, pursue a 5k1, and plea for mitigation.

7. Counsel represented Ms. Risovi during her guilty plea on May 26, 2017, where she acknowledged her right to trial, understanding of the proceedings against her, the elements of the offense charged in the information, her right to a grand jury review, and the accuracy of her factual resume.

8. Counsel reviewed the PSR and discussed whether objecting to any aspect of it would be in her best interest. Ms. Risovi agreed that filing objections to the PSR would be frivolous because she herself admitted to a large enough quantity to secure a base offense level of 38 as wells as admitted to importation and the packaging of methamphetamine at her residence. Once again, all of these admissions were made before she was arrested and establish requisite enhancements to achieve an offense level of 42. Even with a 3-level decrease for acceptance of responsibility she is subject to 30 years to life with her criminal history.

9. Counsel arranged for the submission of 3 character letters and reviewed Ms. Risovi's statement to the Court. She had written it in advance. It was intelligent, cohesive, and persuasive.

10. Counsel submitted a motion for downward variance in lieu of a sentencing memorandum. The motion contained facts about Ms. Risovi and proposed that a sentence beneath the Guideline range would be sufficient to achieve the aims of 18 USC 3553(a).

11. Counsel reached out to DEA Agents Cy Crum and Brian Finney after sentencing to request a further proffer and advocate for a Rule 35 motion.

12. Counsel explained to Ms. Risovi that she had a right to appeal but was unaware of any legitimate grounds for a successful appeal of either her conviction or sentence.
    a. Counsel is not aware of the pronouncement of any incorrect penalty range at either re-arraignment or sentencing.
    b. The Factual Resume and the PSR both stated the correct penalty range.
    c. The Court appropriately admonished Ms. Risovi regarding the elements of her offense, her penalty range, her right to plea not guilty and to proceed to trial, her right to a grand jury review, and appropriately inquired whether Ms. Risovi understood the proceedings taking place at re-arraignment.
    d. The Judge lawfully sentenced within the appropriate statutory range and substantially beneath the Guideline range.
    e. The Judge granted a 5k1 reduction which ultimately gave Ms. Risovi an almost 10% further reduction of her sentence under the (b)(1)(C) range of punishment which already discounted her sentence exposure 33% from the Guideline minimum had the government continued under its initial (b)(1)(B) charge.
13. Counsel also explained that Ms. Risovi might still receive the benefit of a Rule 35 motion if it could make more cases on the basis of her information. To this end counsel requested further proffer interviews. At no time did counsel guarantee Ms. Risovi would get a Rule 35 reduction.
14. Counsel filed a Notice of Appeal despite the fact that Ms. Risovi was not certain whether she wished to pursue an appeal.
15. Counsel discussed Ms. Risovi's appellate rights again in December of 2016. She indicated that she wished to drop her appeal.

**Counsel's Responses to Ms. Risovi's Specific Claims**

1. Jumes failed to properly explain the grand jury process. Further,

his advice to plea by information deprived her of her right "not to be held to answer" to her crime. Also, Ms. Risovi alleges that Jumes failed to explain the difference between an Indictment and an Information.

Response:

Counsel emphatically denies that he failed to explain the difference between an Indictment and Information or the grand jury process. He discussed these issues during his 6 meetings with Ms. Risovi before she entered a guilty plea. Additionally, the Trial Court also explained these rights at her plea. Further, Ms. Risovi signed a waiver of grand jury presentment which was filed in this case.

Further, counsel disputes that Ms. Risovi at any time enjoyed any right "not to answer" for her crimes. While no person may be compelled to incriminate himself, no person has the right to avoid answering either an Indictment or Information.

2. Jumes failed to secure a written proffer agreement. Ms. Risovi also alleges she got no credit "off at sentencing" for her proffer.

Response:

Counsel did obtain, review, and present a written proffer agreement to Ms. Risovi in April of 2016. She signed it and voluntarily proffered extensively.

Ms. Risovi did receive the benefit of her proffer in 2 substantial ways. First, the government agreed to proceed on a 21 USC (b)(1)(C) theory capping her punishment at 20 years as opposed to its originally intended 40-year cap under a (b)(1)(B) theory. Second, Ms. Risovi received a further reduction from 240 months to 220 months under 5k1.

Counsel maximized Ms. Risovi's reductions by actively negotiating for the statutory reduction and persisting in advocacy for a 5k1 on Ms. Risovi's behalf.

3. Jumes failed to challenge the custodial interrogation via

suppression of Ms. Risovi while she was under the influence and without an attorney.

Response:

Counsel spent hours reviewing case discovery in this matter as well as reviewing it with Ms. Risovi during the multiple pre-plea meetings they had. Counsel did not, and still does not, see any legitimate pathway to a suppression of Ms. Risovi's non-custodial confession. Further, Ms. Risovi at no point requested a suppression challenge.

Further, given that Ms. Risovi was being prosecuted under a conspiracy theory, any co-defendant's statement could have, and likely would have, been used to corroborate her confession and been independently admissible on its own. As just one example, Tonya Blackwood, a co-conspirator and ex-girlfriend of Ms. Risovi, implicated Ms. Risovi in a 10-ounce methamphetamine theft which Ms. Blackwood claims was subsequently distributed by Ms. Risovi. Ms. Risovi disputes this theft, however, this statement is one of many examples of non-suppressible evidence that could have subjected Ms. Risovi to a far more onerous punishment. Nonetheless, there is not any known theory for suppression of Ms. Risovi's own confession. Thus, a viable suppression strategy did not exist and even if one had, it would not have been advisable given the overall amount of evidence against Ms. Risovi and the strength of her cooperation leverage.

    4. Jumes failed to explain the purpose and importance of the presentence report.

Response:

Counsel, on multiple occasions, explained that the pre-sentence interview and the pre-sentence report were critical in this case because it presents the pictures of Ms. Risovi and her offense upon which Judge McBryde was most likely to rely. Counsel spoke many times about the Sentencing Guidelines and met with Ms. Risovi multiple times in the Johnson County Jail to discuss the Guidelines. Ms. Risovi did well in her

pre-sentence interview and fully appreciated the gravity of the report.

    5. Jumes failed to challenge the fact that the Court sentenced the defendant in excess of the statutory maximum.

Response:

    The Court did not sentence in excess of the statutory maximum nor did it provide inaccurate information regarding the sentencing range to Ms. Risovi in either her plea admonishments or the factual resume.

    6. Jumes failed to request a psychiatric exam and failed to file a Motion for Competency Hearing. Ms. Risovi also alleges she made a bona fide suicide attempt shortly before her plea of guilty.

Response:

    There were no viable grounds for a psychiatric exam. First and foremost, Ms. Risovi was met multiple times by mental health professionals while in the Parker County Jail. Counsel consulted with staff at the jail that disputed whether Ms. Risovi was suicidal. More importantly, despite this charge of malingering by Johnson Counry Jial Staff counsel took extensive efforts to affect a transfer to comply with Ms. Risovi's wishes.

    Counsel did not file a motion for a competency hearing because at no point did Ms. Risovi express delusions, confusion, or any difficulty comprehending her legal predicament. In fact, her command of facts and narcotics transactions as well as her proper belief that a 5k1 motion was her best opportunity for the lowest sentence possible completely bely her contentions.

    7. Jumes failed to object to errors within her PSR. Further, Jumes failed to "carry over unresolved arguments into a sentencing memorandum" and failed to object to the incorrect starting point within the PSR Guideline calculation.

Response:

Counsel is not aware of any inaccuracy within the PSR that would result in a decrease in the PSR Guideline calculation. The reality is that Ms. Risovi's extensive criminal history coupled with the large amount of narcotics she admits to warehousing as well as her admitted role of providing bookkeeping services subjected to a massive Guideline exposure. The PSR was materially accurate. Ironically, the motion for downward variance, combined with the 5k1 achieved a far better outcome than any objection could.

The Guideline calculation within the PSR was not inaccurate. Nor was the beginning point of that calculation.

Counsel elected to pursue a motion for downward variance combined with the presentment of character letters to filing a sentencing memorandum. This is partly due to the fact that the motion for downward variance contained background facts that are typically the basis for a memorandum. Put simply, counsel's strategy tried to use a motion for downward variance to secure the factual benefits of a memorandum along with providing legal and equitable arguments to garner a sentence beneath the Guideline minimum.

8. Jumes failed to correct the Court's mistaken pronouncement of the statutory maximum punishment and failed to property calculate the applicable Guideline range as well as failed to argue for mitigating circumstances.

Response:

Counsel is unaware of any mistaken punishment pronouncement. Rather, the PSR and factual resume refer to an accurate statutory maximum punishment of 20 years under 21 USC 841(b)(1)(C). Further, at all points after receiving the proposed factual resume counsel and Ms. Risovi only referred to 20 years as the maximum possible sentence.

Counsel's presentment of a motion for downward variance and character letters, insistence upon the Government's issuance of a 5k1

letter, in addition to his statements on Ms. Risovi's behalf at sentencing, were all efforts to mitigate her sentence.

9. Jumes induced and coerced Ms. Risovi to withdraw her appeal and promised she would get a better result via Rule 35. Further, Ms. Risovi alleges Jumes "failed to secure (in writing) a promise form the government to file a motion, within one year." Further, Ms. Risovi alleges that Jumes failed to inform her that a Rule 35 would have to be filed within a year of her sentence."

Response:

   While counsel informed Ms. Risovi that the government indicated that it would pursue a Rule 35 if she persisted in her appeal, counsel made no threats, promises, or guarantees regarding either Ms. Risovi's likelihood to receive a Rule 35 reduction or that waiving her appeal would result in a Rule 35 reduction. Counsel at no point, in this case or any case for which he provides representation, makes any guarantees regarding outcomes.

   Nonetheless, counsel considered the efficacy of a direct appeal. For the reasons stated above, within #11(a)-(e) under Counsel's Actions on Behalf of Ms. Risovi, counsel advised that Ms. Risovi's chances for success on direct appeal were remote. Ms. Risovi elected to waive appeal preferring the hope of a Rule 35 to the low chance of success on appeal.

   Counsel explained to Ms. Risovi that a Rule 35 motion must be presented within one year of sentencing. Ms. Risovi was well aware of that as could be seen through multiple CorrLinks communications.

   Counsel could not have secured a written promise of a Rule 35 motion because at no point did the government agree to such. Further, such written assurances have never been part of any case with which counsel has worked with any division or district of the United States Attorney's Office.

10. Jumes' failures deprived Ms. Risovi of placement in a long-term drug treatment facility "and/or would been sentenced to

approximately 1/4 of the current (168 month) sentence."

Response:

The PSR indicated that Ms. Risovi desired placement in the RDAP program. Further, counsel requested and the Court granted his request for a recommendation that Ms. Risovi participate in the RDAP program.

Counsel is unaware of any action that adversely affected Ms. Risovi's opportunity to be placed in a long-term drug treatment facility. Counsel envisions that such decisions are made by the Bureau of Prisons based upon a number of factors. Nonetheless, counsel did not make any representation or engage in any tactic that contemplated that Ms. Risovi would face a harsher security classification or negatively impact her eligibility for placement in a halfway house or long term treatment facility.

Counsel is unaware of any 168-month sentence or the possibility for a reduction in her length of imprisonment other than the awarding of good time credit with a maximum reduction of 54 days per year.

Ultimately, counsel strove for the best outcome possible for Ms. Risovi. Despite her multiple complaints which are not based in fact counsel feels Ms. Risovi received good representation and a successful outcome given her life choices and decision to confess.

I, Steve Jumes, declare under the penalty of perjury that the above statements are true and correct to the best of my knowledge.

_____
STEVE JUMES

Sworn to and subscribed before me on November 29, 2017 .

_____
NOTARY PUBLIC

JANE A. SCRIBNER
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 02-05-2019

Respectfully submitted,

_____
STEVE JUMES
Texas Bar No.  0796854
Varghese Summersett PLLC
300 Throckmorton, Ste. 1650
Fort Worth, Texas 76102
(T) (817) 203-2220
(F) (817) 203-2220
steve@versustexas.com